AMERICAN BRAKE SHOE & FOUNDRY CO. v. UNITED STATES BRAKE SHOE CO.

(Circuit Court of Appeals, Third Circuit. February 14, 1916.)

No. 1974.

PATENTS ⬤⟲328—VALIDITY AND INFRINGEMENT—BRAKE SHOE.

>The Gallagher patent, No. 651,031, for a brake shoe, claim 5, the gist of which is the reinforcement of the ductile metal lug of the prior Robischung patent by projections from the cast metal of the shoe, was not anticipated, is novel and useful, and discloses invention; also *held* infringed.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the American Brake Shoe & Foundry Company against the United States Brake Shoe Company. Decree for defendant, and complainant appeals. Reversed.

The following is the opinion of the District Court:

In this patent suit there is little difficulty in reaching a conclusion. The validity of United States patent No. 651,031, to J. D. Gallagher, under date of June 5th, 1900, for a brake shoe, is involved, as well as the question of infringement.

The function of brake shoes is to retard revolution of car wheels when pressed against them. Because of the needed friction, coarse cast iron is used in their construction. Because of the tendency of cast iron to fracture when subjected to heavy jars or blows, it has long been customary to cast the metal upon or around a plate or some other suitable piece of steel or wrought iron, which helps to form the back of the brake shoe, and at the same time has the function of preventing a substantial part of the cast metal, if it be fractured, from falling into a switch or frog of the railroad. The brake shoes are attached to the heads of the brake beam, and by the operation of the latter in some approved way bear against the surfaces of the wheels. As a means of attaching the brake shoes to the heads of the brake beams, lugs of various kinds have been made and used as an integral part of the brake shoes. If the lug were made wholly of cast iron, it would have a greater tendency to fracture than any other part of the shoe, because it is a comparatively small part of the brake shoe extending therefrom, and therefore liable to break when carelessly handled before keyed to the head, and because the key is driven in by a heavy hammer, thereby causing a strain at the top of the lug. It has therefore been customary to form the lug around steel or iron of some kind other than cast iron. Such other iron or steel in the lug has sometimes been of the same piece as that used in the back of the brake shoe, and has sometimes been of a separate piece, attached, however, to the other. In either case, however, the cast iron is under, around, and over the lug (except where the key is intended to enter), thus keeping the softer metal in proper shape, while the softer metal, on the other hand, keeps the cast iron free from fractures which would soon render the brake shoe useless.

Turning to the patent in suit, we find the patentee, in explanation of the nature of his alleged invention, uses the following language: "I have found after much experiment that a back for a brake shoe may be made out of mild steel and formed in dies, so that the back and all the fastening devices for attaching the shoe to the brake head are in one piece, that this back may be attached to a cast iron wearing face in such a way that the cast iron of the wearing face will reinforce the lugs or other fastening devices, thus stiffening them and insuring against bending, and this shoe thus made may be worn down until the back itself is wholly worn away, even down to the brake head. While I have used mild steel in my experiments, and consider it the best metal

to be used for this purpose, and shall use it in my description of the shoe, it is obvious that any other metal that is capable of being formed in dies and has sufficient toughness or tenacity may be used in its stead. I refer especially to metals capable of being formed in dies, for the reason that, while other methods of making the back of this invention may be used—such, for instance, as making them out of malleable iron—and such a back would, if the fastening devices were reinforced by a rigid metal, be within this invention, still I do not now consider such a back practical on account of its great expense."

The only claim relied upon by the plaintiff is claim 5, which is as follows: "5. A brake shoe having one or more fastening devices to attach it to the brake head made of a ductile metal reinforced in their projecting portions by projections from the cast metal of the shoe, substantially as described."

It is urged that that claim is broad enough to cover a construction wherein the plate of ductile metal and the loop of ductile metal forming the lug are not of the same piece, but are separate pieces. A careful reading of the entire patent and a study of the drawings made part thereof, fails to reveal a suggestion that Gallagher intended to disclose what the plaintiff now relies upon. The plaintiff has never made lugs upon the brake shoes manufactured by it in accordance with the design of the patent in suit. The ductile metal used by the plaintiff in the construction, of the backs and lugs of the brake shoes manufactured by it is in two separate pieces, the part used for the back being in the form of a plate cut from sheet metal, and the part used for the formation of the lug being bent around the plate and all reinforced by the cast iron forming the entire shoe.

The Gallagher patent in suit, if by any possibility it can be deemed valid, is limited to the integral construction of the ductile metal parts. But the Gallagher patent was anticipated by United States patent No. 495,269, to Robischung, under date of April 11, 1893, for a brake shoe. What has been heretofore called a plate of ductile metal is called by Robischung in his patent a skeleton on which the shoe is cast. This skeleton (line 65, page 1, of his patent) "may be used conjointly with the lug B, or independent thereof, and may be integral with the lug (see Fig. 4), or otherwise connected therewith (see Fig. 6), as preferred." This is clearly a disclosure of all that appears in claim 5 of the patent in suit. There is no evidence in the case tending to show that the brake shoe of the patent in suit is better than the brake shoe of the Robischung patent. Indeed, the specific construction of neither is used to-day by either plaintiff or defendant. It is hard to understand how either of these patents could have been issued, unless it be that the Patent Office has not before it what is going on in the foundries and machine shops throughout the country. It is a matter of common knowledge that shapes of castings are infinite in their variety, and that, where strength is required in any part of a large or small casting, it has been customary to cast the iron around some other or different metal of selected quality and shape.

The bill must be dismissed, at plaintiff's costs. Let a decree be presented.

Frederick P. Fish, of Boston, Mass., and Paul Synnestvedt, of Pittsburgh, Pa., for appellant.

J. C. Sturgeon, of Erie., Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the bill in the suit before us, the American Brake Shoe & Foundry Company, the owners of patent No. 651,031, granted June 5, 1900, to Joseph D. Gallagher, for a brake shoe, charged the United States Brake Shoe Company with infringement thereof. On final hearing the court below held the patent invalid. From a decree dismissing the bill, the American Company took this appeal.

Gallagher's patent concerns brake shoes for cars and locomotives. The strains on such shoes in the heavy equipment of modern railroading are enormous, the proofs showing that they are forced against the wheel with as much as 20,000 pounds pressure, and the wheel drag on them is from 2,000 to 5,000 pounds. Cast iron has proved best adapted to meet this strain. Prior to Gallagher's device, the cast iron shoes in common use were cast with an integral cast iron lug. By means of a key passing through an opening in such lug, the shoe was attached to the brake beam.

The objections to a cast iron shoe are shown in the testimony. Speaking of the action of air brakes, a witness says:

"The shock to the brake shoe was such that it was very apt to break at the angle formed by the lug and the back of the shoe, that being always the weakest place in the casting, and it would also break when worn thin or worn half through; it was liable to break anywhere and the result of the break was that the broken portion, which wasn't attached to the break head, would fall onto the track, and might get into a frog, and repeatedly accidents happened."

To increase the life of the shoe, chilling the cast iron was tried. This developed further weakness, the testimony being:

"When the shoes were chilled the top of the lug, which was only three-eighths of an inch thick, and sometimes, due to rather poor work, not so thick, they would be apt to break through in throwing on the heap or in the keying of the brake shoe to the head. That key is driven in by a heavy hammer, and of course the strain is up against the top of the lug. Now, if this is a little weak, that would be cut out by the leverage, the wedge action."

The patentee in his specification fairly sets forth the mischiefs incident to cast iron lugs, when he said:

"There has been a great tendency of the fastening and other lugs on these shoes to break either under the strain of service or in handling the shoes during the shipment, and this has been especially true of chilled shoes, owing to the character of the metal from which they are necessarily cast."

Attempts were made to overcome this difficulty. These are fairly summarized in the application of the patent:

"Some inventors have inserted in the casting rods running longitudinally of the shoe, some steel mesh and some wires, while others may employ backs of malleable iron [this manifestly refers to Robischung's device, referred to below], wrought iron, or steel. All of these devices have the effect of more or less strengthening the shoe and of rendering less liable a break across the shoe, but none of these has done so perfectly, and most of them have been so expensive as to prevent their use. All of them have had either one or two serious defects—either no attempt was made to make the lugs on the back of the shoe of ductile metal, in which case they retained their liability to break off in use or handling; or the lugs were formed wholly of ductile metal, in which case the lugs were exceedingly apt to be bent in the rough handling that such castings undergo before use, and when it was attempted to attach them to the brake head they would not fit, and were therefore useless.

In view of these difficulties, the patentee well said:

"The ideal shoe, of course, is one which is practically unbreakable in handling or when worn thin, and one which at the same time cannot in any part be bent out of shape by rough usage, and which can also be cheaply made."

These three factors—first, practical unbreakableness; second, non-liability to bending; and, third, cheapness—were, as we shall see, all happily met by the device of the patent in suit. Before turning, however, to the mode in which Gallagher sought to overcome these difficulties, reference should be made to the attempt of Robischung, in patent No. 495,269, granted April 11, 1893, to solve one of these difficulties. By reference to that patent, it will be seen that Robischung inserted in his shoe castings a back of malleable iron or steel, which strengthened the shoe; but this attaching lug made the shoe impracticable, because, being made entirely of ductile metal, it was liable to bend. And it is apparent that, when the lug is bent, its key opening will be out of alignment when the key is attempted to be inserted. That Robischung made a valuable contribution to the art, in imbedding in the body of the back of the brake shoe a ductile metal back, is quite apparent, and in that respect Gallagher made no additional contribution to the art; but it is equally apparent that, if the development of the art had ended with Robischung's ductile metal back, the art would still be using brake shoes of the old type, as indeed it did for the seven years from 1893, when Robischung's patent was granted, until 1900, when Gallagher patented his device. This patent of Robischung was bought by the plaintiff in this case, and attempts were made, without success, to commercially introduce it. In that respect the uncontradicted testimony of Gallagher, the present patentee, is:

"Robischung described and claimed a perfect commercial back, because he made it of any kind of malleable metal, and there has been no material improvement on the Robischung patent back since his patent; but his lug was impossible. I had used in experiments in the Lappan Company malleable iron hooks on drivers' shoes, to make a form of attaching them, and they were impracticable. They took up too much space. The Robischung lug was too massive. Insert that in a shoe, and it goes down, in order to get a perfect grip, half to three-quarter ways the width of the shoe, and it renders the shoe so fragile that it is of no earthly use. That is one of the Robischung shoes. If I would take that and drop on it another shoe, it would break right in two. Q. You mean the lug? A. Yes, right over the lug."

From this testimony it will be seen that although Robischung's patent was purchased at a large price, and attempts were made to use it, while it had some valuable suggestions, it resulted in no practical brake shoe, and had made no impress whatever on the art in the seven years following its grant. Recognizing the desirability of the ductile metal lug as one which would not break when keyed up or bend in handling, Gallagher's idea was to retain Robischung's ductile back and ductile lug; and in this way secure the lug and body toughness requisite to prevent breakage. But he went a step further. He overcame what Robischung had not, and what made it a failure, viz. the liability of Robischung's ductile lug to be bent out of shape, and so prevent its alignment with the key. Gallagher, therefore, introduced the wholly novel idea of reinforcing the ductile lug with metal raised from the cast metal of the shoe. This simple and novel cast metal lug reinforcement gave the ductile lug the stiffness necessary to prevent it from bending. In essence, Gallagher's device was coupling ductile metal lug strength with cast metal lug immobility. His mere mechanical

change was small in size, but large in function, in that he changed from an unsafe to safe agency the link between the brake shoe body and the brake beam. This link, strong in its tensile and unbreakable in its cast iron metal, made a dependable connecting link, which in a novel and efficient way coupled the brake shoe body to the power.

The device of Gallagher centered in his reinforced lug. This reinforced lug was his contribution to the art, and it was cast iron reinforcement that made possible the elimination of a breakable cast metal lug. He took the metal back of Robischung, but, instead of adopting his ductile lug, he reinforced it with cast metal, and thereby solved the problem. The gist of Gallagher's device, and of the claim here in issue, consists of fastening devices "made of ductile metal reinforced *in their projecting portions by projections from the cast metal of the shoe.*" This is freely admitted by the witness Gallagher, whose testimony is:

"Q. You have stated that you purchased the Robischung patent while you were connected with the complainant company. Do you recollect at this time what you paid for this patent? A. I paid $25,000 for it. Q. I further gather from your testimony that in your patent here in suit you don't pretend to describe any improvement on the Robischung back, do you? A. No, sir. Q. As I understand, your invention consists of an improvment of the Robischung lug? A. Wholly. Q. You practically use, and have used since the purchase of this Robischung patent, the Robischung back, have you not? A. Yes, sir. Q. Did you ever use the Robischung lug as described and shown in the Robischung patent? A. Never."

Referring to Gallagher's patent, it will be seen he provides a back *A,* made of a tough steel, which is pressed by dies into the various shapes shown in the several figures. This back contains openings *B B,* through which the molten metal may flow in casting, and has a central lug *D,* passing through the keyhole *E* of which the shoe is keyed to the brake head. Gallagher's preferred method of casting his shoe and obtaining the desired amount of molten metal to reinforce the ductile metal lug is thus set forth in his patent:

"I prefer to do this in the following manner: I first prepare the mold just as I would if I intended to make a solid cast iron shoe, only I have on the pattern small bosses corresponding with but larger than the holes or the rectangular apertures *B B* in the back. When the mold is formed, I insert into the mold at the back or top of the shoe the back, being careful to so place it that, where narrower than the shoe, the iron will flow around its edge and imbed it firmly in the cast metal, and insert in the keyhole *E* a core of the exact size of the required keyhole, and I anchor this back in any of the usual ways. When this is done, I close the mold and pour in the molten iron, which forms the body *F* of the shoe. This molten iron flows through the holes behind the end lugs *C C* and forms a backing or reinforcement for these lugs, as shown by the dotted lines *G G* in Fig. 5. It also flows through the holes or rectangular apertures *B B* and into the depressions behind them, made by the small bosses on the pattern, and forms the bosses shown at *H H* in Fig. 5. It also flows up into the lug *D* around the core *R* and reinforces

230 F.—40

the steel shells of the lug D as shown at I in Fig. 5. It also flows around the edges of the back where narrower than the shoe."

The result of this operation is summarized by Gallagher in this statement:

"Thus in this one operation I both firmly attach a back to the face of the shoe and I also strongly reinforce and stiffen the lugs on the back on which the greatest strain comes in service and in handling."

On this device the claim here in issue, 5, was granted for:

"A brake shoe having one or more fastening devices to attach it to the brake head made of a ductile metal reinforced in their projecting portions by projections from the cast metal of the shoe, substantially as described."

In making its commercial shoe, the complainant has in the assembling and casting of the shoe availed itself of the Robischung device of assembling the lug and the supporting back separately. But this separation ends while the shoe is being cast, for when ready for use the cast metal makes a unitary structure of back, lug, metal body, and metal lug reinforcement. This is quite fully set forth in the testimony, where Gallagher says:

"If I understand the question correctly, you mean to ask me what invention is in my patent over the Robischung. The invention lay in taking the uncommercial idea and making it commercial. The Robischung device, so far as the back alone was concerned, was commercial. The Robischung device, so far as the lug was concerned, was impossible, both from the standpoint of mechanics and from the standpoint of cost. I took the general Robischung idea and made a commercial product. Now, you might think that the mere bending up of the back or the forming of a steel lug was all that was necessary; but that is not true. If you form the back with the lug, as is shown in one of the figures of my patent, or if you use a separate steel loop, as I subsequently used in the commercial making of the shoe, and did nothing more, the back or lug, unprotected, projecting from the cast iron, was altogether too fragile for its service use. It might be very pretty in a picture, but it wouldn't do in service. In order to make it serviceable, in order to enable its use in a commercial way, that ductile metal back or lug had to be stiffened by some metal, and the obvious metal to use was the metal of the shoe. Now, in order to make the thing commercial, I took the cast metal of the shoe and brought it up into and around the steel lug. That stiffened the steel lug, and that is the invention of the patent."

The device has gone into extensive use. The proofs show that:

"We made in 1902 probably half a million to a million of shoes. * * * Since 1902 we have made over fifty millions of those steel type reinforced lug shoes, and a number of millions of shoes that had modifications of that, but steel reinforced backs and lugs, which are not included in that fifty million. The result has been that the old form of shoe with a cast iron lug has practically disappeared from the market, except under certain minor individual uses."

In our judgment, Gallagher's device was novel, useful, and inventive, and his fifth claim valid.

Turning to the question of infringement, we find the body of the defendant's shoe is made of cast iron, in which is embedded a wrought iron back extending the length of the shoe. The defendant's lug consists of a strip of wrought iron, which is looped around the back plate and projects above the body of the shoe. When the shoe is cast, this

loose metal lug becomes fixed in place, and is reinforced by projections of the cast metal of the shoe, which not only fill all the space within the loop not occupied by the keyhole, but also reinforce it externally. The test of the alleged infringement is the finished structure ready for use. In that respect, we have in the defendant's brake shoe all the elements of claim 5, namely, the "brake shoe, having one or more fastening devices to attach it to the brake head, made of a ductile metal reinforced in their projecting portions by projections from the cast metal of the shoe, substantially as described." The mere fact of the loop and back being separate before casting, and in the form shown in Robischung's device, does not relieve it from infringement. If the defendant confined itself to Robischung's device of a simple tensile metal lug, it would not infringe. But it did not stop there. It took Robischung's separable ductile metal lug, and reinforced it with Gallagher's projections from the cast metal of the shoe. The result is that, when its shoe is in permanent usable form, we then find the ductile separable loop is fixedly seated in place, and is reinforced in its projecting portions from the cast metal of the shoe. No matter what its initial form, it is this final reinforcement of the projecting portions of the ductile loop by cast iron from the body of the shoe that determines its infringing character.

Finding both validity and infringement, the decree below must be reversed, and the record remanded, with directions to enter a decree adjudging the fifth claim of Gallagher's patent valid, and ordering an accounting.